## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT BARNES, On Behalf Of Himself And** | : | **No. 03-CV-6471** |
| **All Other Similarly Situated,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DITECH.COM,** | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                    **April 19, 2005**

Plaintiff Robert Barnes filed this class action complaint against defendant, DiTech.Com, alleging that Defendant violated the adverse action notice provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681m. Plaintiff's Complaint stems from his applications to DiTech.com for a home equity loan and a first mortgage loan. Plaintiff states two claims. First, Plaintiff claims that Defendant willfully failed to provide him with an adverse action notice when, due to Plaintiff's poor credit score, Defendant offered him an interest rate on a home equity loan which was higher than the best available rate. Second, Plaintiff claims that Defendant willfully failed to disclose that its denial of a first mortgage application was based in whole or in part on information obtained from a third party and failed to inform Plaintiff that he could make a written request to learn the nature of the information. Before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Class Certification. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted as to both claims, and Plaintiff's Motion for Class Certification is accordingly denied as moot.

I.      **Factual Background**[1]

In June 2002, Plaintiff applied to Defendant for a home equity loan of $47,000 through the internet.   Defendant approved him for the loan, but because his credit score was negatively affected by erroneous adverse information on Plaintiff's credit report, he was offered the loan at an interest rate higher than Defendant's best rate.[2]   Specifically, in a telephone call, Defendant's representative informed Plaintiff that the rate offered was adversely affected by his poor credit due to a Verizon Wireless charge-off.  Plaintiff told Defendant that he had already obtained copies of his credit reports, that he never had an account with Verizon Wireless, and that he was already in the process of disputing the Verizon Wireless information with the credit reporting agencies. After hearing this,  Defendant's representative informed him that he might be able to obtain a lower interest rate after that problem was resolved, suggested that they talk again in a few weeks, and sent Plaintiff a "welcome" packet of information.   Thereafter, Plaintiff withdrew his application for a home equity loan, and did not reapply.  No written adverse action notice was issued to Plaintiff in connection with the home equity loan application.

After hearing the offered interest rate on the home equity loan, Plaintiff applied for a first mortgage with Defendant in the amount of $156,000 because Defendant's interest rates for first mortgages are not variable based on credit scores.[3]   However, Defendant denied Plaintiff's

---

[1] The facts are taken from the memoranda and documentary evidence submitted to the Court, and are recited in the light most favorable to Plaintiff, the non-moving party.  See Matsushita Elec. Indus. Co., LTD v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[2] Specifically, Plaintiff alleges that he was offered a loan at 11.5% interest, whereas Defendant's best rate at the time for that product was 8.125%.

[3] All consumers who qualify for a mortgage, based on their credit history and other factors, are given a set rate.

application for a first mortgage outright. Defendant contends that it mailed an adverse action notice on June 28, 2002, immediately after deciding to deny Plaintiff's mortgage application. The notice stated that he was being denied a mortgage because of inadequate cash reserves, and indicated that the credit decision was based in whole or in part on a report from the Trans Union consumer reporting agency. No other reasons or information sources were indicated. Plaintiff denies receiving the notice, but he admits to reviewing a copy of the notice Defendant alleges was sent.

II.   **Standard of Review**

Under Federal Rule of Civil Procedure 56(c), the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] To avoid summary judgment, the non-moving party must come forth with admissible factual evidence establishing a genuine issue of material fact.[5] In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party[6] but need not consider unsupported assertions, speculation or conclusory allegations.[7] The Court must determine whether there are any genuine issues for trial.[8]

---

[4] Celotex Corp. v. Catrett, 447 U.S. 317, 322 (1986).

[5] Id.

[6] EEOC v. Westinghouse Elec. Corp., 725 F.2d 211, 216 (3d Cir. 1983).

[7] Easton v. Bristol-Meyers Squibb Co., 289 F. Supp. 2d 604, 609 (E.D. Pa. 2003).

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

III.    **Discussion**

    A.    Motion for Summary Judgment

        1.    Home Equity Loan Claim

Plaintiff's first claim is filed under 15 U.S.C. § 1681m(a).[9]  Plaintiff claims that Defendant did not provide him with an adverse action notice when it offered Plaintiff a home equity loan interest rate higher than the best available rate.  To succeed on such a claim, a plaintiff must prove that:  1) the lender took adverse action against a consumer; 2) the action was based in whole or in part on information contained in a consumer credit report; 3) the lender failed to provide adequate oral, written or electronic notice of the adverse action to the consumer; and 4) the lender's failure to provide adequate notice was either negligent or willful.[10]  In this case, Plaintiff alleges that the failure to provide notice was willful rather than negligent.

Both parties agree that the interest rate Defendant offered Plaintiff was based on information contained in a consumer credit report, but Defendant argues that the Court should enter summary judgment in its favor because:  1) no "adverse action" occurred since Plaintiff was only

---

[9] 15 U.S.C. §1681m(a) reads: Duties of users taking adverse actions on basis of information contained in consumer reports:  If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall--
(1) provide oral, written, or electronic notice of the adverse action to the consumer;
(2) provide to the consumer orally, in writing, or electronically--(A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
(3) provide to the consumer an oral, written, or electronic notice of the consumer's right--(A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

[10] The provisions regarding willful noncompliance are found in 15 U.S.C. 1681n.  The provisions regarding negligent non-compliance are found in 15 U.S.C. § 1681o.

offered a rate quote and he withdrew the loan application before Defendant took "final action" on it; 2) the oral notice Defendant provided to Plaintiff was adequate, and Plaintiff had already obtained his credit report and taken steps to correct the errors; and 3) Plaintiff offers no evidence that Defendant acted willfully.

        a.      Did Plaintiff Suffer an Adverse Action Under the FCRA?

       The parties dispute whether an "adverse action" occurs when a consumer's credit rating negatively affects a lender's rate quote. Plaintiff did not specifically request a particular interest rate, and Defendant, relying on 15 U.S.C. §1681a(k)(1)(A), argues that when a borrower does not apply for credit on particular terms, offering him credit on unfavorable terms because of his credit history is not an "adverse action."[11]

       Plaintiff argues that Defendant's actions constitute an "adverse action" under the "catch-all provision" of the FCRA, 15 U.S.C. §1681a(k)(1)(B)(iv), which defines adverse action as "an action taken or determination that is– (I) made in connection with an applications that was made by, or a transaction that was initiated by, any consumer. . . and (II) adverse to the interests of the consumer." Defendant counters that the catch-all provision does not apply to the credit context. Those courts in this district that have considered this question have agreed with Plaintiff. In Crane v. American Home Mortgage Corporation, Civ. A. No. 03-5784, 2004 WL 1529165 (E.D. Pa. July 7, 2004), a consumer applied for a mortgage loan, and was offered a loan at 1% higher than the lender's best rate. The consumer alleged that the denial of pre-qualification for a loan at the best rate was an adverse action triggering the notice requirements of the FCRA. The lender argued that the

---

[11] This section incorporates the language of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(6), which defines adverse action, in part, as "a refusal to grant credit in substantially the amount or substantially the terms requested."

"catch-all provision" of the adverse action definition did not apply in the credit transaction context. Relying on a recent decision by the Seventh Circuit,[12] the court agreed with the consumer, holding that the "catch-all" definition of "adverse action" applies to credit applications, including offers of credit at unfavorable interest rates.[13]   The Court agrees with the <u>Crane</u> court, and finds that Defendant's offer of a home equity loan at a higher interest rate because of Plaintiff's poor consumer credit score is an adverse action under the FCRA which requires adverse action notification.[14]

b.   <u>Was Adequate Notice Provided to Plaintiff?</u>

The Court must now decide whether Defendant provided adequate adverse action notice to Plaintiff.  It is undisputed that Defendant provided Plaintiff with oral notice that he was offered a higher interest rate due to the Verizon Wireless charge-off on Plaintiff's credit reports, and advised him to continue disputing the information contained in his credit reports with the consumer reporting agencies.  Plaintiff has not alleged that the verbal notice provided was inadequate; his

---

[12] <u>Treadway v. Gateway Chevrolet Oldsmobile</u>, 362 F.3d 971 (7th Cir. 2004) (holding that the FCRA defines "adverse action" more broadly than the ECOA, and that the "catch-all provision" applies to credit transactions).

[13] <u>See also</u> <u>Thomas v. Cendant Mortgage</u>, Civ. A. No. 03-1672, 2004 WL 2600772, at *3, 7 (E.D. Pa. Nov. 15, 2004) (FCRA defines "adverse action" regarding credit decisions broadly to include both ECOA definition and broader definition set forth in FCRA "catch-all provision").

[14] Defendant argues that this "catchall provision" was not intended to apply to applications for credit, and particularly not to situations where the consumer was simply offered a rate quote based on their credit history.  In support of its position, Defendant points out that Congress enacted new legislation, not yet effective, that adds a provision to § 1681m requiring a lender to send an adverse action notice if it uses credit scores to offer terms that are materially less favorable than those available to a substantial proportion of consumers.  Defendant argues that if the FCRA already required notice in such situations, Congress would not have passed this new provision.  The Court finds this argument unpersuasive.  It is entirely possible that Congress realized that there was dispute over the interpretation of the adverse action definitions and was simply clarifying its original intent through this amendment.
    Defendant also argues that it never took "final action" on Plaintiff's loan application because Plaintiff withdrew his application for credit before a letter of conditional approval was issued, and therefore no adverse action notice is required.  The statute does not require a "final action" to trigger the notice requirement.  <u>Thomas</u>, 2004 WL 2600772.  The statute refers to "adverse actions" and "determinations," not "final actions."

allegations center on the absence of written notice.  Since oral notice is permissible under the FCRA,[15] and Plaintiff has not specifically alleged that the verbal notice provided was inadequate under the FCRA, the Court finds no genuine issue of material fact regarding this issue.

c.     <u>Was Defendant's Failure to Provide Notice Willful?</u>

In an FCRA suit under § 1681m(a), a plaintiff must prove that the lender acted negligently or willfully.  In this case, Plaintiff alleges that Defendant's failure to provide notice was willful. To show willful non-compliance with the FCRA, Plaintiff must show that Defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive."[16]  When there is evidence that an act or failure to act was based on a general policy of a company, rather than an isolated event which is promptly cured, it is generally for a jury to decide whether there has been a willful violation of the law.[17]  Plaintiff points out that Defendant's employee testified that it is the company's practice to send written adverse action notices only if an application for credit is denied, and not if credit is offered on unfavorable terms because of a poor credit history.[18]

However, § 1681m(a) allows written, electronic, or *verbal* notice, and so evidence of a policy regarding written notice does not, taken alone, raise a genuine issue of material fact. Neither party has provided evidence as to the company policy, if any, on verbal disclosures in such circumstances.  Absent proof of a company policy, the question of willfulness becomes a case-by-

---

[15] 15 U.S.C. § 1681m(a).

[16] <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 970 (3d Cir. 1996).

[17] <u>Sheffer v. Experian Information Solutions, Inc.</u>, C.A. No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003).

[18] Camerto Dep. at 13-19.

case issue of material fact.

Construing the evidence in a light most favorable to Plaintiff, there is no evidence that Defendant willfully failed to provide him with notice regarding the adverse action. In fact, Plaintiff has acknowledged that he was verbally provided with notice. Plaintiff admits receiving oral notice that the interest rate Defendant offered was related to the Verizon Wireless charge-off on his credit report, and acknowledges that he made Defendant aware that he knew how to obtain a copy of his consumer credit report and how to dispute alleged misinformation therein. The fact that verbal notice was provided undermines Plaintiff's claim that Defendant willfully violated his right to notice under the FCRA.

Because Plaintiff has made a claim only for willful violation and not negligent violation of the FCRA, the Court finds that Plaintiff has put forth no evidence which raises any genuine issue of material fact as to whether Defendant willfully failed to provide him with an adverse action notice. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's 1681m(a) claim is granted.

2.     First Mortgage Claim Under §1681m(b)

Defendant denied Plaintiff's application for a first mortgage, thereby triggering the FCRA notice requirements. Defendant alleges that it mailed an adverse action notice immediately after the decision was made to deny Plaintiff's mortgage application. While claiming that he never received the notice,[19] Plaintiff has raised complaints about the content of the letter Defendant alleges

---

[19] Even if Plaintiff did not receive notice, no liability would attach if Defendant maintained reasonable procedures to assure compliance with the law. 15 U.S.C §1681m(c). Plaintiff points to no evidence suggesting that Defendant failed to maintain reasonable procedures to assure that adverse action notices were sent when Defendant

issuing, which was a check-off form letter.  Specifically, he alleges that Defendant's decision was based in whole or in part on information from Fannie Mae and that the adverse action notice Defendant issued was deficient under § 1681m(b) because it failed to notify him that: 1) the decision was based in whole or in part on information from a third-party source,[20] and 2) Defendant would be obligated to disclose the nature of that information if Plaintiff made a written request for disclosure within sixty days.  The notice stated only that the denial of Plaintiff's mortgage application was based on credit information from the Trans Union consumer reporting agency, and that the reason for the denial was insufficient cash reserves.  The notice provided the address for Trans Union and informed Plaintiff of his right to obtain a free credit report.

　　　　To succeed on a § 1681m(b) claim, a plaintiff must prove all of the following:  1) the lender denied an application for consumer credit or increased a charge for consumer credit;  2) the action was based in whole or part on some information provided by a third party (a party other than a consumer reporting agency) bearing on the consumer's credit worthiness, character, reputation or mode of living; 3) the lender failed to inform the consumer, at the time the lender notified the consumer of the adverse action, that the adverse decision was based in whole or part on information from a third party and that the consumer has a right to learn the nature of the information by filing a written request within sixty days; and 4) the lender's failure to provide adequate notice was either willful or negligent.

　　　　On this claim, the parties dispute whether Defendant denied Plaintiff's mortgage

---

denied an application for credit, and this is not the focus of Plaintiff's complaint.

　　　　[20] The parties agree that Fannie Mae is not a consumer reporting agency, and hence § 1681m(b) rather than § 1681m(a) applies.

application based in whole or in part on information received from Fannie Mae, whether the notice Defendant issued satisfied the statutory requirements for an adverse action notice, and whether any inadequacy in the notice was willful.[21]

a.    Information Provided by Fannie Mae

Plaintiff alleges that in denying his application, Defendant relied, at least in part, upon the analysis of Fannie Mae's automated underwriting system.  Fannie Mae is a government sponsored private corporation created to provide a stable, secondary market for the purchase of residential mortgage loans.[22]  Fannie Mae provides mortgage lenders with access to its automated desktop underwriting tool ("DU"), which allows a lender to enter information about the consumer obtained from other sources, such as the consumer's credit application, credit reports, and other consumer reports.[23]  Based on this information, the DU provides a preliminary assessment of whether the loan would meet Fannie Mae's eligibility requirements for purchase.  If a person is a credit risk the DU report might recommend that the application be "referred with caution."  In such a scenario, Fannie Mae may still buy the loan or require additional documentation regarding the applicant's income or assets before buying the loan on the secondary market.  Furthermore, Fannie Mae does not provide any information bearing on an individual's credit worthiness.  The DU simply applies the Fannie Mae *standard* for assessing credit worthiness to credit information about an individual obtained from other sources.

Fannie Mae did not collect and evaluate Plaintiff's credit information, nor did it direct

---

[21] Again, Plaintiff has not claimed negligent failure to provide proper notice.

[22] 12 U.S.C. § 1719.

[23] Thomas, 2004 WL 2600772, at *4.

or recommend whether Defendant should approve Plaintiff's loan application. In fact, Fannie Mae did not engage in any affirmative action on Plaintiff's application for credit.

Plaintiff points to no evidence that Defendant's denial was based on the DU report's "refer with caution" flag. The only evidence Plaintiff offers is that his application was not denied until shortly after Defendant produced the DU report. The timing alone does not raise an issue of material fact, especially since the entire loan review process occurred in a very short space of time.

While the DU report may have noted that Plaintiff had inadequate cash reserves (the stated reason for the denial), information about Plaintiff's cash reserves was not provided by Fannie Mae or the DU report. Rather, this particular information was provided by Plaintiff himself and by his credit reports from consumer credit agencies. As the information was already available to Defendant, and it was Defendant that input that information into the DU, there is no genuine issue of material fact as to whether the DU report constitutes information from a third party about which Defendant must notify Plaintiff.

> b.     Was Adequate Notice Provided to Plaintiff?

Plaintiff further claims that the notice Defendant allegedly sent him does not meet the requirements of § 1681m(b) because it did not disclose Defendant's reliance on information provided by a third party. Plaintiff further argues that Defendant has a corporate policy of <u>never</u> disclosing that a decision was based in whole or in part on information obtained from Fannie Mae's DU.

Defendant argues, correctly, that §1681m(b) only requires disclosure of "the nature of" the credit information obtained from third party sources, and even that disclosure is required only when the consumer makes a written request for the reasons for the adverse action within sixty days of the action. Nothing in the statute requires the lender to reveal third-party *sources* of information,

even upon a written request for the reasons for the action.[24]  Defendant alleges that it issued an

adverse action notice indicating that the denial was due to inadequate cash reserves– i.e. indicating

the *nature of* the information underlying the denial.  Even assuming that this information came from

the DU report, as Plaintiff alleges,[25] Plaintiff would not have been entitled to know that Fannie Mae

was the source.  As noted above, Plaintiff has put forth no evidence that the decision was based on

any information provided exclusively by Fannie Mae or the DU report.

Defendant's corporate policy of never checking the notice item which states that the

credit decision was based in whole or in part on information from a third party when the third party

is Fannie Mae is entirely consistent with the strictures of § 1681m(b)[26] because the only *new*

information provided by the DU is whether the loan is likely to be purchased by Fannie Mae on the

secondary market.  If the DU categorizes the loan as "refer with caution," Defendant's representative

testified that DiTech can still approve the loan.  All other data and information bearing on credit

decisions is obtained by Defendant from other sources, including Plaintiff himself and Plaintiff's

consumer credit reports.

Furthermore, the intent of the FCRA is to ensure the fairness and accuracy of credit

reporting by consumer credit agencies.[27]  The act is designed to ensure that consumer credit reporting

agencies use reasonable procedures to meet the credit information needs of commerce without

sacrificing confidentiality and accuracy.  To this end, Congress enacted provisions which require

---

[24] Plaintiff did not make a written request for information in this case.

[25] This allegation was rejected by the Court *infra*.

[26] See Thomas 2004 WL 2600772, at *10.

[27] 15 U.S.C. § 1681.

lenders to make consumers aware of factors affecting their credit scores of their right to work with the consumer credit reporting agencies to correct any errors in their credit histories.  Disclosing to consumers that a DU report indicted the loan might not be  accepted for repurchase by Fannie Mae does not provide the consumer with any information about the factors affecting their credit score. And even if the consumer knew that Fannie Mae recommends the lender "refer with caution," that analysis is not subject to "correction"– it would be the underlying information that could be corrected.  Since all the information input into the DU is from other sources, it is sufficient for the adverse action notice to notify the consumer of the deficiencies in their credit without notifying them that their credit has been categorized "refer with caution" using the Fannie Mae credit analysis standards.

Plaintiff's allegation that Defendant maintains a policy of non-disclosure in violation of the FCRA is not supported by the evidence.

c.       If Notice Was Inadequate, Was the Inadequacy Willful?

Plaintiff argues that Defendant's general policy of not disclosing to consumers that a denial is based on information from Fannie Mae's DU is sufficient to create a triable issue of fact as to willfulness.  However, as noted above, under § 1681m(b) of the FCRA the Defendant is not required to disclose third-party sources of credit information.[28]  Plaintiff admits that Defendant's adverse action notice pointed out problems with his credit (inadequate cash reserves) and indicated the name of the consumer credit agency from which it had received a credit report.  He points to no evidence that Defendant willfully failed to provide notice that it was denying his mortgage application, nor that it willfully violated the FCRA requirements for notice regarding information

---

[28] Thomas, 2004 WL 2600772, * 10.

obtained from third-parties.  Therefore, summary judgment for Defendant is appropriate based on this element of Plaintiff's claim as well.


      B.    <u>Motion for Class Certification</u>

Plaintiff has asked the court to certify two classes of individuals: 1) those persons who applied to Defendant for a home equity loan and for whom Defendant received a credit score under 720; and 2) those persons who applied for a first mortgage through Defendant for whom Defendant received a "referred with caution" recommendation from the Fannie Mae DU and to whom Defendant sent a form denial of credit letter.  He alleges that the former proposed class has a 1681(a) claim against Defendant, and the latter proposed class has a 1681(b) claim against Defendant.

Because the Court has granted Defendant's Motion for Summary Judgment on both claims, Plaintiff's Motion for Class Certification is moot.  However, even if the Court were not dismissing the instant claims, the claims are not appropriate for class certification under Federal Rule of Civil Procedure 23 ("Rule 23").

Rule 23 sets forth the prerequisites and additional requirements for certifying a class. The prerequisites are as follows: 1) the class is so numerous that joinder of all class members is impracticable; 2) there are questions of law and fact common to the class; 3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and 4) the representative party will fairly and adequately protect the interests of the class.[29]  If the proposed class meets these prerequisite criteria, the action can be maintained as a class action if the class also meets one of three

---

[29] Fed. R. Civ. Pro. 23(a).

additional criteria.  Plaintiff alleges that his proposed classes meet the additional criteria set forth in Rules 23(b)(2) and 23(b)(3).  Rule 23(b)(2) reads: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Rule 23(b)(3) reads: "the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiff claims that the members of the first proposed class have been harmed by Defendant's failure to provide adequate notice that Defendant has offered them an interest rate that has been adversely affected by their credit score.  Turning first to the prerequisites for Rule 23 class certification, this proposed class is likely so numerous as to make joinder of all class members impracticable, and there are questions of law common to the class.  However, essential questions of fact needed to establish liability are not common to the class.  Specifically, the Court would need to examine, on a case-by-case basis, whether oral notice was provided and whether it was sufficient.  If notice was not provided to an individual, the Court would also need to determine whether the oversight was willful on a case-by-case basis.  Plaintiff's claims are likely to be atypical of the class, since he had already obtained a copy of his credit report before applying to Defendant for the loan, and was already in the process of disputing credit information.  His awareness of his rights may have impacted upon the information Defendant provided to him over the telephone.  Finally, the Court finds that Plaintiff has abandoned the interests of some potential class members who may only be able to prove negligent violations since he has chosen to file a claim only for willful violations of the FCRA.  Turning to the additional requirements, Plaintiff has not put forth any evidence that

Defendant, as a matter of general practice, does not provide loan applicants with adequate verbal notice when Defendant offers consumers a higher interest rate due to the consumer's poor credit score.  Therefore, there is no evidence suggesting that Defendant has acted or refused to act on grounds generally applicable to the class.  Finally, the Court finds that questions of fact affecting only individual members would predominate over common questions of law and fact.  Accordingly, the Court finds that Plaintiff's first proposed class would not be appropriate for class certification under Rule 23.

Plaintiff claims that his second proposed class has been injured by Defendant's practice of failing to notify mortgage applicants that their application was denied based in whole or in part on information provided by the Fannie Mae DU.  Again turning to the prerequisites for certifying a class under Rule 23, the class may be numerous, although Defendant disputes this. There are questions of fact and law common to the class, and the claims of Plaintiff appear to be typical of the claims of the class.  However, again the Court finds that by  filing only claims for willful violations of the FCRA, Plaintiff has abandoned the interests of some potential class members who may only be able to prove negligent violations.  Therefore, although the Plaintiff also satisfies the Rule 23(b)(2) additional requirement for class certification on this claim, the second proposed class cannot be certified for the purpose of this lawsuit.

IV.   **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is granted.  Plaintiff's motion for class certification is denied. An appropriate order follows.

-16-

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT BARNES, On Behalf Of Himself And** | : | **No. 03-CV-6471** |
| **All Other Similarly Situated,** | : | |
|       **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DITECH.COM,** | : | |
|       **Defendant** | : | |

### ORDER

**AND NOW**, this 19th day of April, 2005, upon consideration of Defendant's Motion for Summary Judgment [Doc. # 37] and all related memoranda and responses thereto, and of Plaintiff's Motion for Class Certification [Doc. # 38] and all related  memoranda and responses thereto, and for the reasons set forth in the attached memorandum opinion, it is hereby **ORDERED** that:

1.    Defendant's Motion for Summary Judgment is **GRANTED**.  Plaintiff's claims are dismissed with prejudice.

2.    Plaintiff's Motion for Class Certification is **DENIED**.

3.    The Clerk of the Court shall mark this case **CLOSED** for statistical purposes.

It is so **ORDERED**.

                        **BY THE COURT:**


                        **/S/ Cynthia M. Rufe**

                        _____

                        **CYNTHIA M. RUFE, J.**